Rosalie S. CONLEY, Appellant,

v.

Calvin H. WARNE et al., Appellees.

No. 2–56931.

Supreme Court of Iowa.

Dec. 17, 1975.

Rehearing Denied Jan. 14, 1976.

**684**

Gene L. Needles, Conley, Zohn & Needles, Des Moines, for appellant.

Ray E. Clough, Mason City, for appellees Warnes.

Gilbert K. Bovard, Laird, Burington, Bovard & Heiny, Mason City, for appellee Horizon Enterprises, Ltd.

Heard before MOORE, C. J., and MASON, UHLENHOPP, REYNOLDSON and HARRIS, JJ.

HARRIS, Justice.

This equity action was brought by the owner of lakeside property against adjoining landowners and a building contractor seeking injunctive relief and damages. The action arose from extensive reconstruction which plaintiff claimed to be in violation of zoning ordinances and constitute a nuisance. The trial court held plaintiff was estopped from complaining and for the most part denied injunctive relief and de-

nied damages. On plaintiff's appeal we affirm in part, reverse in part and remand with instructions.

Rosalie S. Conley (plaintiff) and Calvin H. and Mavis M. Warne (the Warnes) owned adjoining lakeside dwellings in the city of Clear Lake, Iowa. Neither family permanently resided in their dwelling. Plaintiff was a Des Moines resident who purchased her property in 1968. She lived in the lake home with her husband and family during summers. The Warnes, Mason City residents, purchased their property in 1971 having rented the cottage previously.

In April of 1972 the Warnes undertook to extensively remodel their cottage. They contracted with defendant Horizon Enterprises, Ltd., (Horizon) to do the work. Horizon was an Iowa corporation engaged in construction work in the vicinity.

On April 21, 1972 Howard Elder, president of Horizon, obtained a city building permit for the project. Neither plaintiff nor the Warnes were cognizant of the information given by Elder in obtaining the permit. Although the issue is disputed the record reveals Elder's information did not accurately describe the extent of the remodeling. Evidence was offered to show the permit would not have been granted had the actual remodeling plans been disclosed. The building permit authorized the Warnes to construct a basement under their cottage and build an attached garage and patio at an estimated cost of $8000.

The project came to about $24,000 and converted the one-story cottage to a two-story dwelling. The reconstruction was in violation of the Clear Lake zoning ordinances.

Before construction commenced the Warne cottage had been non-conforming as to a side yard zoning regulation, which required a five foot strip between building and boundary line for a one-story cottage. The side yard between the Warne cottage and the property line is about two feet. During the reconstruction the existing cot-

tage was raised to permit a supporting story to be built underneath. The side yard remained the same when the second story was added. However a local zoning ordinance requires the side yard to be increased in width by three feet for each additional story. Clear Lake Ordinance 206, § 11(1).

A new sun deck was added to the rear of the cottage on the lake front at the second story level. It encroached by about two feet into a 20 foot rear yard limitation of the local zoning ordinance. For a time a roof of the Warne cottage projected across the property line and onto and above the land of plaintiff.

The record amply supports the trial court's finding that "[f]rom the beginning of the construction to its completion, plaintiff registered no real or substantial complaint or asserted no rights with respect to the construction, or any violation of such rights. It was not until the weekend before this lawsuit started that complaint was made. * * *. Plaintiff's husband testified that he did not complain because 'my wife kept me from complaining.'" By the time complaint was made the only exterior work remaining was completion of the sun deck.

At the time of trial the roof had been cut back and no longer encroached on plaintiff's property. The Warnes conceded the sun deck violated, to the extent of about two feet, the rear yard limitation. They repeatedly offered to cut the deck back two feet to conform with the ordinance. They also offered to cut off a part of the deck so as to limit the obstruction of plaintiff's view of the lake.

The trial court found plaintiff was estopped from obtaining any relief except as to the sun deck. The Warnes were ordered to conform the deck to the rear yard requirements. No money damages were awarded.

■ I. General principles of estoppel are well settled. In most situations the doctrine is applied strictly. *O'Dell v. Hanson,* 241 Iowa 657, 42 N.W.2d 86 (1950); 28

Am.Jur.2d, Estoppel and Waiver, § 36, pp. 642–643. Elements must appear in relation both to the party to be estopped and in relation to the party claiming estoppel. See generally 28 Am.Jur.2d, Estoppel and Waiver, § 35, pp. 640–642.

■ Our cases provide for application of estoppel in a special situation. A neighbor who observes in silence and without objection as an adjoining landowner expends large sums toward property improvement may become bound by his silence. See *McCartney v. Schuette,* 243 Iowa 1358, 1361–1362, 54 N.W.2d 462, 463–464 (1952); *Snieders v. Brantsen,* 245 Iowa 81, 86, 60 N.W.2d 779, 781 (1953); *Alcorn v. Linke,* 257 Iowa 630, 639–641, 133 N.W.2d 89, 95 (1965); *Ivener v. Cowan,* 175 N.W.2d 121, 124 (Iowa 1970).

■ Plaintiff and her husband both testified that by April of 1972 they knew the Warnes were planning extensive remodeling. By April or May they saw the cottage jacked up and were told a two-story home would be the result. The Warnes testified they showed blueprints to plaintiff and her husband though it is likely plaintiff's family did not look at them.

Plaintiff's husband conceded that as early as May he walked around and observed the construction work on weekends and had a fair idea of what the total project was. He was shown through the upper level of the home by Dr. Warne around the first of July. Plaintiff's family was at their cottage most weekends in May and June of 1972. They encountered many difficulties because of the ongoing construction, including debris in the lake, lumber stacked against their house, tar and cement spatters, dirt in the driveway, and damage to the driveway.

From the beginning of construction to its completion plaintiff registered no real or substantial complaint and asserted no violation of any right with respect to the construction until the weekend before this lawsuit was started. The only work then remaining was the completion of the sun

deck. Plaintiff and her husband conceded as much.

This failure cannot be attributed to inability on the part of plaintiff or her husband to register complaints. Complaints were registered but not as to the extent or nature of the project. Complaints were addressed only to the fact excavation was too close to their home or to the large trees. There were also complaints of a drainage problem caused by the excavation and of unsightly debris from the construction. The record is conclusive that plaintiff was aware of the extent of the remodeling. Plaintiff did not raise any objection to the scope of the reconstruction until it was nearly completed. Under these facts, and the cases previously cited, plaintiff became bound by her silence.

■ II. Plaintiff asserts equitable estoppel should be unavailable to the Warnes and to Horizon because of their bad-faith misrepresentations and intentional violations of the zoning ordinances. It is true " * * * [t]here is no estoppel unless the one erecting the improvement does so in the good faith belief he is within his rights in so doing. * * *." *Snieders v. Brantsen*, 245 Iowa at 85, 60 N.W.2d at 781. See also 28 Am.Jur.2d, Estoppel and Waiver, § 112, p. 770; 31 C.J.S. Estoppel § 94, p. 508. The difficulty with this position lies in the fact the Warnes relied upon Mr. Elder to comply with all legal requirements. Ignorance of an ordinance will not excuse its violation. *Boardman v. Davis*, 231 Iowa 1227, 1232, 3 N.W.2d 608, 611 (1942). However under the circumstances shown it appears there was no such bad faith as to render equitable estoppel unavailable.

Plaintiff points to Elder's application for a building permit which requested permission merely to add a garage, patio and basement under the existing dwelling. This gave the impression there would be no extension of the nonconforming use of the property. Testimony by the zoning administrator who issues building permits indicated the application failed to divulge plans for the nonconforming sun deck. It further indicated the addition of the basement would be further nonconformance if used as living quarters. It appears the basement is so used. The trial court found violations of the ordinances were innocent. So far as the Warnes are concerned we agree.

Since the Warnes acted in innocence and good-faith reliance on the contractor the zoning violations should not prevent them from claiming estoppel. Accordingly the Warnes should not be enjoined from maintaining their reconstructed home.

■ A somewhat different question is presented as to Horizon. Horizon cannot claim to have acted in similar good faith because Horizon's president obtained the building permit with something less than full disclosure as to the extent of reconstruction. Nor does it appear Horizon's president can claim to be ignorant of the zoning restrictions of Clear Lake. However Horizon was not at the time of trial constructing or maintaining the home. Accordingly there was no need to enjoin Horizon from doing so.

"Equity interposes by injunction to prevent future rather than past acts, and so acts and practices will not, as a rule, furnish a basis for injunctive relief when they have been discontinued or abandoned before institution of the suit to restrain them, or even after such suit is begun, particularly where there is nothing to indicate a probability that they will be resumed or where the repetition of the act is impossible * * *." 42 Am.Jur.2d, Injunctions, § 5, p. 731.

■ III. Plaintiff is not estopped to complain of the construction of the sun deck to the rear of the Warne's cottage. The sun deck was built as a second story extension into the back yard and the commencement of its erection promptly precipitated this suit. The sun deck is assailed on two grounds. First, it is claimed any extension of a nonconforming use is improper. Secondly, the sun deck violates both side yard and back yard limits of local ordinances quite aside from the fact the deck is

an extension of a nonconforming use. Because we agree with plaintiff's position on the first of these grounds it will be unnecessary to consider the second.

■ Nonconforming buildings and uses generally cannot be expanded or enlarged, except as permitted by ordinance. *Stan Moore Motors, Inc. v. Polk County Bd. of Adjust.,* 209 N.W.2d 50, 52–53 (Iowa 1973); 8A McQuillin, Mun.Corp. (Third Ed.), § 25.-206, pp. 69–76; 101 C.J.S. Zoning § 195, pp. 956–959. Clear Lake's Ordinance 206, § 4(4)(J) provides:

"No building shall be erected, converted, enlarged, reconstructed, or structurally altered except in conformity with the area regulations of the district in which such building is located, except that in any "C" District a property owner may convert, reconstruct, enlarge or structurally alter a building upon application to the issuing authority, without conforming to the area regulations, front yard regulations, side yard regulations, rear yard regulations of "C" Districts but such a property owner shall not exceed the non-conformity existing prior to such conversion, reconstruction, enlargement or structural change."

Under this ordinance the Warnes could have applied to the issuing authority for permission to construct the sun deck. The issuing authority could have allowed its construction to any extent the sun deck did not exceed the nonconformity. That is, the sun deck could have been constructed to within eight feet of each side lot line (Ordinance 206, § 11(1)) and to within 20 feet of the lakeshore line to the rear (Ordinance 206, § 12(3)).

However the record discloses permission to construct a sun deck was never sought from the issuing authority and never given. The application and permit did refer to a patio. But the blueprints make it clear the patio referred to was below the sun deck at the first floor level. Accordingly construction of the sun deck was not allowable.

There is some dispute as to whether plaintiff adequately sought relief from the existence of the sun deck. Her petition prayed for removal of such of the construction as existed at the time in violation of the local ordinance.

The trial court erred in failing to enjoin the construction of the sun deck and in failing to order it removed.

■ IV. The trial court refused plaintiff's claim of damages. Much of the claim is controlled by what we have already indicated. As to the main part of the Warne dwelling plaintiff is estopped.

As to the sun deck the violation will be temporary. Since it is temporary it does not fall under the rule outlined in *Patz v. Farmegg Products, Inc.,* 196 N.W.2d 557, 562 (Iowa 1972). We have said that "[w]here a nuisance is not permanent but subject to abatement, in the absence of injury to the property itself, the measure of damages is the diminution in rental value caused by the nuisance, together with such special damages as may result therefrom. * * *." *Kellerhals v. Kallenberger,* 251 Iowa 974, 981, 103 N.W.2d 691, 695 (1960). There was no evidence of such diminution in rental value and the trial court properly denied recovery of damages.

■ V. Trial court also denied plaintiff's claim for special damages. We discussed the nature of such damages in *Kellerhals v. Kallenberger,* supra, 251 Iowa at 981, 103 N.W.2d at 695 and *Earl v. Clark,* 219 N.W.2d 487, 490 (Iowa 1974). These cases balance and accommodate two somewhat conflicting principles. A plaintiff is required to establish a claim of damages with some reasonable certainty, showing a rational basis for ascertaining their amount. On the other hand a plaintiff is not required to show the amount with the same degree of certitude required for a showing of the fact they were sustained. In *Northrup v. Miles Homes, Inc. of Iowa,* 204 N.W.2d 850, 857 (Iowa 1973) we said: " * * * If it is speculative and uncertain whether damages have been sustained, recovery is denied. If the uncertainty lies only in the amount of damages, recovery

may be had if there is proof of a reasonable basis from which the amount can be inferred or approximated."

Plaintiff showed damage to her driveway and showed the project caused a need to construct a curb at its west edge. She also showed the construction would require blacktopping or a gutter between the two houses. But plaintiff offered only hearsay evidence as to the cost of such remedies. A proper hearsay objection was interposed and the trial court was right in allowing no recovery for these items.

Plaintiff also claims damages both against the Warnes and Horizon for special damages relating to the manner of construction. This claim is unrelated to zoning violations and has to do with labor expended by plaintiff's husband in cleaning up debris and removing tar and cement spatters from plaintiff's house. The trial court denied any such recovery stating " * * * insufficient evidence was received as to the cost of materials or the extent of the labor necessarily performed by *plaintiff* caused by the unlawful or negligent trespass on the part of either of defendants * * * onto plaintiff's premises. Plaintiff's husband * * * is neither a party to this lawsuit nor has he assigned any claims or rights he owns to plaintiff herein. * *." (Emphasis added.)

The fact the labor was performed or materials supplied by plaintiff's husband cannot enure to the benefit of the Warnes or Horizon. Plaintiff is not attempting to collect a debt defendants owe her husband for they neither injured his property nor hired him to do any work. Plaintiff is the real party in interest. See *Leasing, Incorporated v. Gage,* 199 N.W.2d 43, 44–45 (Iowa 1972).

" ' * * * The weight of authority is conclusive to the effect that a defendant owes to the injured compensation for injuries, the proximate cause of which was his own negligence, and that the payment by a third party cannot relieve him of this obligation; that regardless of the motive impelling their payment, whether from affection, philanthropy or contract, that the injured is the beneficiary of the bounty, and not the defendant who caused the injury.' " *Rigby v. Eastman,* 217 N.W.2d 604, 609 (Iowa 1974) (injured received workmen's compensation claim) quoting from *Clark v. Berry Seed Co.,* 225 Iowa 262, 271, 280 N.W. 505, 510 (1938). See also 22 Am.Jur.2d, Damages, § 206, p. 286; 25 C.J.S. Damages § 99(1), pp. 1011–1013. See also *Beringer v. Dubuque Street R'y Co.,* 118 Iowa 135, 139–140, 91 N.W. 931, 933 (1902).

Plaintiff's husband testified he expended in excess of 100 hours in such efforts and estimated the value of such time at $3.00 per hour. Upon our de novo review we hold plaintiff is entitled to recover judgment in the amount of $300 from Horizon.

The cause is remanded and the trial court is directed to enter judgment in conformance herewith.

Costs of this appeal are taxed one fourth to the Warnes and three fourths to Horizon.

Affirmed in part, reversed in part, and remanded with instructions.